Priscilla L. Seaborg
Attorney at Law
1906 SW Madison Street
Portland, OR 97205
(503) 417-7744
plslaw@qwest.net

Attorney for Defendant
Brandon Leonard Maynard

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 11-97-1-RE |
| Plaintiff, | MEMORANDUM IN SUPPORT OF MOTION FOR ORDER TO SUPPRESS EVIDENCE AND STATEMENTS |
| v. | |
| BRANDON LEONARD MAYNARD, | HEARING REQUESTED |
| Defendant. | |

Mr. Brandon Maynard, by and through his attorney, Priscilla L Seaborg, has moved this Court to suppress statements and evidence taken during his arrest.

## FACTS[1]

Mr. Maynard was arrested pursuant to a months-old arrest warrant while he was hanging out with friends near the Convention Center MAX station on June 3, 2011. U.S. Marshall Troy Gangwisch tackled Mr. Maynard from behind and took him to the ground. He immediately restrained Mr. Maynard

---

[1] Some of the information in this section is derived from police reports provided in discovery. The defense does not intend to adopt the evidence from discovery as accurate.

Page 1  Memorandum in Support of Motion for Order to Suppress Evidence and Statements
*Priscilla L. Seaborg □ Attorney at Law*
*1906 SW Madison Street, Portland, Oregon 97205*
*Telephone (503) 417-7744 □ Facsimile (503) 221-1908*

by placing him in handcuffs in the presence of at least five law enforcement officers who were also on the scene.

Both Mr. Maynard and the police reports are in agreement about one aspect of this arrest: Mr. Maynard was never given his *Miranda* warnings at the scene of his arrest. Instead, he was immediately searched for weapons and then moved a few yards away while his girlfriend was arrested and escorted away and additional law enforcement personnel arrived. The officers then ask him whether he has any drugs or illegal items in his backpack, making it clear to Mr. Maynard that he must answer their questions because it would be a bad idea for him to go into custody with contraband that the officers did not know about. After Mr. Maynard answered the Marshall's questions, officers immediately searched his backpack and found drugs and drug paraphernalia. Mr. Maynard was completely restrained, calm, and many feet away from the backpack at the time. He was never asked for his permission to search the bag, nor did he give consent to search.

The police reports tell a different story. According to the reports, U.S. Marshall Gangwisch never questioned Mr. Maynard at all. Instead, Mr. Maynard conveniently and immediately volunteered that the drugs were in his backpack and, with no prompting, consented to the search of his possessions.

## ARGUMENT

**1. Mr. Maynard's statements to the U.S. Marshalls must be suppressed because they were involuntary and taken in violation of *Miranda v. Arizona*.**

Under *Miranda v. Arizona*, 384 U.S. 436, 444-45, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Government may not use statements at trial that were elicited by custodial interrogation unless an accused has been informed of and has freely and voluntarily waived the privilege against self-incrimination guaranteed by the Fifth Amendment. The Government bears a "heavy burden" to demonstrate that the accused "knowingly and intelligently" waived these rights. *Id.* at 475.

Page 2  Memorandum in Support of Motion for Order to Suppress Evidence and Statements

*Priscilla L. Seaborg ⬜ Attorney at Law*
*1906 SW Madison Street, Portland, Oregon 97205*
*Telephone (503) 417-7744 ⬜ Facsimile (503) 221-1908*

1   The Government must also establish that the challenged statements were made voluntarily. See

2   *Arizona v. Fulminante*, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). The "totality of the

3   circumstances" are assessed to determine whether a statement was voluntary, including personal history,

4   level of educational attainment, the physical condition of the accused, as well as the circumstances in

5   which the statement was elicited. See *Crane v. Kentucky*, 476 U.S. 683, 691, 90 L.Ed.2d 636, 106 S.Ct.

6   2142 (1986); *Mincey v. Arizona*, 437 U.S. 385, 399-401, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978);

7   *Schneckloth v. Bustamante*, 412 U.S. 218, 226, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

8   There is no question that Mr. Maynard was in custody when he admitted that he possessed illegal

9   drugs: not only had he already been arrested, he was physically restrained and completely surrounded by

10  U.S. Marshalls and other law enforcement officers. He admitted that the drugs were in his bag as a result

11  of direct questioning by law enforcement officers, moreover, he was given the impression that harmful

12  consequences would follow from his refusal to volunteer this information.

13  All of this was without the benefit of *Miranda* warnings, warnings which would have advised

14  him of his constitutional rights, including the right to remain silent in the face of questioning by the

15  authorities. *Miranda* warnings at the time of interrogation are "indispensable" to mitigate against the

16  pressures of questioning by law enforcement. *Miranda*, 384 U.S. at 469. They also serve to demonstrate

17  that the authorities are willing to respect those rights should they be invoked. *Id.* at 468. In this instance,

18  the authorities failed to warn Mr. Maynard of his constitutional rights before asking questions which

19  could reasonably be expected to elicit an incriminating response. See *Rhode Island v. Innis*, 446 U.S.

20  291, 301, 100 S.Ct. 1682, 1690, 64 L.Ed.2d 297 (1980); *United States v. Gonzalez-Sandoval*, 894 F.2d

21  1043, 1047 (9th Cir. 1990) (statements obtained in violation of *Miranda* when questioning by INS agent

22  was "reasonably likely to elicit responses which would substantiate" criminal charge.)

23

24  Page 3  Memorandum in Support of Motion for Order to Suppress Evidence and Statements
*Priscilla L. Seaborg ▫ Attorney at Law*
*1906 SW Madison Street, Portland, Oregon 97205*
25  *Telephone (503) 417-7744 ▫ Facsimile (503) 221-1908*

26

1  Mr. Maynard's statements admitting that he possessed drugs that were located in his backpack

2  should therefore be suppressed. The physical evidence discovered as a direct result of his unlawful

3  interrogation should be suppressed as fruit of the poisonous tree. *Wong Sun v. United States*, 371 U.S.

4  471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963).

5  **2.    Evidence seized from the search of Mr. Maynard's backpack without a warrant in**

6  **violation of the Fourth Amendment should be suppressed.**

7  While Mr. Maynard was physically restrained, and after the authorities elicited incriminating

8  statements from him, his backpack was searched on the scene. This search was illegal: it was not a valid

9  search incident to arrest, and Mr. Maynard did not consent to the search of his property. The physical

10  evidence discovered as a result of this search, therefore, should be suppressed.

11  A search incident to an arrest is conducted solely for the purposes of finding weapons the

12  arrestee might use, or evidence the arrestee might conceal or destroy. *Chimel v. California*, 395 U.S.

13  752, 762-63, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). This means that the spatial or temporal proximity of

14  a search to an arrest is insufficient: some threat or exigency must be present. See *United States v.*

15  *Chadwick*, 433 U.S. 1, 15, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), overruled on other grounds by

16  *California v. Acevedo*, 500 U.S. 565, 571, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991). The scope of a

17  search incident to an arrest is limited to "the area into which an arrestee might reach in order to grab a

18  weapon or evidentiary ite[m]." *Chimel*, 395 U.S. at 763. Thus, it is a "strictly limited" exception to the

19  requirement that the police obtain a warrant from a neutral magistrate before searching for evidence of a

20  crime. *Id.* at 759, quoting *Trupiano v. United States*, 334 U.S. 699, 708, 68 S.Ct. 1229, 92 L.Ed. 1663

21  (1948).

22  Such a search is unreasonable where the interests justifying it are absent. See *Chimel*, 395 U.S. at

23  768. Law enforcement officers may not search an object that the arrestee cannot reach at the time of the

*Priscilla L. Seaborg □ Attorney at Law*
*1906 SW Madison Street, Portland, Oregon 97205*
25  *Telephone (503) 417-7744 □ Facsimile (503) 221-1908*

26

1  search without a warrant. See *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009);

2  *Chimel*, 395 U.S. at 763, 768. The facts in this case clearly demonstrate that the search of Mr. Maynard's

3  bag exceeded the scope of a legitimate search incident to an arrest.

4        Officers searched Mr. Maynard's bag after he was handcuffed, searched for weapons, and after

5  they moved him away from the bag; there was no reasonable basis for officers to fear for their safety or

6  to believe that Mr. Maynard could reach into his bag to destroy evidence under these circumstances.

7  This was, simply speaking, an investigative search for evidence of a crime without a warrant.

8  "Permitting police to conduct broad investigative or rummaging searches following an arrest,

9  irrespective of the exigencies, effectively makes the Fourth Amendment dead letter." *United States v.*

10  *Caseres*, 533 F.3d 1064, 1072 (9th Cir. 2008).

11        Considering that Mr. Maynard was handcuffed some distance away from the bag, there was no

12  danger that he could have accessed any weapons in the bag or could have destroyed any evidence inside

13  the bag, unless he "possessed of the skill of Houdini." *Thornton v. United States*, 541 U.S. 615, 626, 124

14  S.Ct. 2127, 158 L.Ed.2d 905 (2004) (Scalia, J., concurring); see also *United States v. Vasey*, 834 F.2d

15  782, 787 (9th Cir.1987) ("Chimel does not allow the officers to presume that an arrestee is

16  superhuman.").

17        *United States v. Maddox* clearly demonstrates that this was not a search of his person. 614 F.3d

18  1046 (9th Cir. 2010). In *Maddox*, the Ninth Circuit suppressed evidence found during a search of the

19  defendant's keychain. After detaining the defendant, the officer had taken his keychain, thrown it onto

20  the seat of defendant's car, then placed him under arrest and searched his person some distance away

21  from the car. *Id.* at 1047. The officer then returned to the defendant's car, removed the keychain, and

22  opened a metal vial that was hanging from the keychain, finding a substance he believed to be

23  methamphetamine. Id. The court held that "[w]hile the key chain was within Maddox's immediate

24  Page 5  Memorandum in Support of Motion for Order to Suppress Evidence and Statements
*Priscilla L. Seaborg □ Attorney at Law*
*1906 SW Madison Street, Portland, Oregon 97205*

25  *Telephone (503) 417-7744 □ Facsimile (503) 221-1908*

26

1  control while he was arrested, subsequent events-namely Officer Bonney's handcuffing of Maddox and

2  placing Maddox in the back of the patrol car-rendered the search unreasonable." *Id.* at 1048.

3      Just as in *Maddox*, Mr. Maynard was in possession of the searched item when he was arrested,

4  but he was arrested, restrained and moved some distance away from the bag subsequent to his arrest.

5  Only then did the police open the bag and find narcotics inside of it.

6      DATED this 25th day of August 2011.

                                        /s/ Priscilla L. Seaborg
                                        Priscilla L. Seaborg, OSB No. 90117
                                        Attorney for Defendant